IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA ZUNA, | CASE NO. 4:15-cv-01825-MWB-GBC |
| | |
| Plaintiff, | (JUDGE BRANN) |
| | |
| | MAGISTRATE JUDGE COHN |
| v. | |
| | REPORT AND |
| CAROLYN W. COLVIN, | RECOMMENDATION TO DENY |
| COMMISSIONER OF SOCIAL | PLAINTIFF'S APPEAL |
| SECURITY, | |
| | |
| Defendant. | Doc. 1, 9, 10, 12, 16, 17 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying Plaintiff's application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq.*, 416 *et seq.* (the "Regulations").[1]

Plaintiff complained of pain in her neck, back, shoulder, and right knee, numbness in her extremities, and shortness of breath and other respiratory symptoms. Doc. 10. Examinations and imaging showed objective abnormalities in her neck, back, shoulder,

---

[1] Part 404 governs DIB and Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

right knee, and respiratory system. Doc. 10. Vocational evidence indicates that if these impairments restricted Plaintiff to a limited range of sedentary work with additional mental limitations, she could perform the basic job responsibilities of a semi-conductor bonder, a stuffer, and a nut sorter. Doc. 10. If claimant can perform even one of these jobs, she is not disabled. 42 U.S.C. § 423(d)(2)(A) (Claimant is not disabled if capable of performing job if it were offered to claimant, regardless of whether job openings at that position exist or claimant is likely to get hired).  A nut sorter "observes nut meats on conveyor belt, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks" and "[p]laces defective nuts and foreign matter into containers." 521.687-086 NUT SORTER, DICOT 521.687-086. Non-treating medical opinions, uncontradicted by any other "medical opinion" in the record, supported the ALJ's finding that Plaintiff could perform a range of sedentary work. *See* 20 C.F.R. §404.1527(a) (defining "medical opinion"). In *Chandler*, the Third Circuit held that an ALJ properly relied on a non-treating opinion, where no other medical opinion existed in the record before the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360-63 (3d Cir. 2011); *see also* 20 C.F.R. §§404.1527(a); (d) (If statement is from individual who is not an acceptable medical source, or is on issue reserved from the Commissioner, it does not meet definition of "medical opinion").

The Court finds that the ALJ properly relied on the medical opinions and denied benefits. The substantial evidence standard requires the Court to uphold the ALJ's

decision if any reasonable person would have relied on the relevant evidence to deny Plaintiff benefits. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The ALJ decision only lacks substantial evidence if the Court would direct a verdict in Plaintiff's favor. *Id.* Plaintiff's lay interpretation of medical evidence and less-than-fully credible testimony are insufficient to demonstrate that no reasonable person would have relied on the medical opinions to find that she could perform work in the national economy, or that the Court would direct a verdict in her favor if the issue were before a jury. The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On July 11, 2012, Plaintiff applied for SSI. (Tr. 26). On November 13, 2012, the Bureau of Disability Determination denied this application, (Tr. 107-25) and Plaintiff requested a hearing.  (Tr. 126). On July 7, 2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 41-89). On July 18, 2014, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 17-40). Plaintiff requested review with the Appeals Council, which the Appeals Council denied on February 9, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-7). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On September 20, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On November 27, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On January 5, 2016, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 12). On February 5, 2016, Defendant filed a brief in response ("Def. Brief"). (Doc. 16). February 12, 2016, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 17). On January 15, 2016, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be

furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Relevant Facts in the Record

### A. Age, Education, and Vocational History

The Regulations classify Plaintiff, born in 1966, as a younger individual. (Tr. 17); 20 C.F.R. § 404.1563. Plaintiff has a limited education and no past relevant work. (Tr. 33). The administrative transcript is 672 pages long. Doc. 10.

## B. Musculoskeletal Impairments

Plaintiff alleges onset in October of 2010. (Tr. 26). She briefly reported musculoskeletal symptoms in the summer of 2011, but by October 2011, she had no musculoskeletal symptoms. (Tr. 295, 297, 300).

She established care in February of 2012 with PA-C Nse Apke, who noted she "ha[d] some forms for completion." (Tr. 319). She reported back symptoms and numbness in her upper extremities, and reported neck pain on follow-up. (Tr. 317, 319). On June 28, 2012, she was hospitalized for a latex allergy and had no musculoskeletal complaints, normal gait, and walked without assistance. (Tr. 430). On July 11, 2012, she applied for SSI. (Tr. 26). On July 12, 2012, she presented to an orthopedic PA-C, D. Miller-Griffie, using a cane, although her gait appeared normal, "declined" physical therapy, did not stop smoking, and did not follow-through with a referral to a doctor. (Tr. 327-28). On July 31, 2012, she submitted a Function Report supporting her SSI application where she reported that she could not lift more than five pounds, her leg and arms tingle "24/7," could not walk without a cane or holding onto a wall, and was limited in squatting, bending, standing, reaching, walking, kneeling, and climbing stairs due to pain in her neck and back. (Tr. 240-47). Plaintiff's mother submitted a similar Function Report. (Tr. 258-65). Four days later, on August 3, 2012, she reported to PA-C Apke that she had "no neck pain…no musculoskeletal symptoms, no arthralgias, no soft tissue swelling" and PA-C Apke observed normal findings on musculoskeletal examination.

(Tr. 304). PA-C Apke also noted Plaintiff reported "she is no longer receiving cash assistance and has no money on her" and that she was "trying to get housing and they request a letter from the doctor stating that she is disabled." (Tr. 353). No letter from PA-C Apke that Plaintiff is disabled appears in the record. Doc. 10.

In September of 2012, Plaintiff denied musculoskeletal symptoms and musculoskeletal examination was normal during an emergency room visit and follow-up with PA-C Apke. (Tr. 352, 498). The same month, Plaintiff followed-up with PA-C Millie-Griffie, reporting continued falls, neck pain and "walking with a cane" (Tr. 590). Plaintiff had decreased sensation, increased reflexes, and positive Hoffman's sign, but normal strength and range of motion with no spasm or tenderness. (Tr. 590). PA-C Miller-Griffie again referred Plaintiff to Dr. Fernandez and ordered an MRI. (Tr. 590-91).

On October 23, 2012 and January 4, 2013, Plaintiff followed-up with PA-C Apke, "request[ed] a letter to take with her confirming that she has metal in her body," and denied having any symptoms except an earache, with "no systemic symptoms and not feeling tired or poorly." (Tr. 350-353) ("no musculoskeletal symptoms, no arthralgias, no soft tissue swelling"). Examination was normal except tenderness. (Tr. 352). There is no mention of a cane. (Tr. 350, 352).

In February and March of 2013, Plaintiff treated with Dr. Raymond Dahl, D.O., at OIP for knee pain. (Tr. 592-94). On March 20, 2013, Dr. Dahl noted MRI came back "essentially normal" and wrote "I have recommended physical therapy. I did go over the

MRI with her." (Tr. 594).  Plaintiff reported being in a lot of pain and that she utilized a

cane, but examination was normal aside from antalgic gait:

> On physical exam, the patient is alert and oriented x3, in no acute distress, pleasant, cooperative with normal posture and antalgic gait. The right lower extremity is neurovascularly intact with good sensation and good distal pulses. She has no ligamentous laxity to varus or valgus stress and anterior/posterior drawer. Skin is clean, dry, and intact. No effusion.

(Tr. 594).

Eight days later, Plaintiff presented to new primary care doctor Dr. Paul

Baughman, D.O.. (Tr. 555). She reported that Dr. Dahl "never sent her to physical

therapy." (Tr. 555, 560). Dr. Baughman noted "she tells me she doesn't have the money

to do it but she has gateway [insurance]." (Tr. 555). Plaintiff reported hip pain and denied

"ambulatory dysfunction, arthritis, injury and joint swelling." (Tr. 555). Examination

indicated crepitus in the right knee and Plaintiff used a cane to ambulate. (Tr. 556).

Plaintiff began physical therapy on April 1, 2013. (Tr. 633). By April 25, 2013, Dr.

Baughman observed that Plaintiff was "walk[ing] with a normal gait for age" and

examination was normal, although she reported pain "everywhere," particularly her left

shoulder. (Tr. 552-53).

Plaintiff treated with Dr. Baughman and PA-C Kropa on May 7, 2013 and May 14,

2013. (Tr. 545-48). Plaintiff denied musculoskeletal symptoms. (Tr. 548). Examination

was normal, with normal gait. (Tr. 546). Plaintiff was hospitalized from May 16, 2013

through May 20, 2013 for allegedly passing out while driving, but musculoskeletal

examinations were normal, with no cyanosis, swelling, tenderness, effusion, or edema. (Tr. 373, 407, 409, 411).  Contemporaneous physical therapy records indicated no loss of balance, shortness of breath, or dizziness on ambulation, although she "furniture walked at times." (Tr. 415). Occupational therapy evaluation indicated that Plaintiff was "independent" in all daily activities using both upper and lower extremities, with intact attention span, concentration, memory, sensation, and social interaction. (Tr. 417). Plaintiff reported pain was "0." (Tr. 417). Providers opined "[patient] is independent with [activities of daily living] and functional mobility. No need for skilled [occupational therapy] services." (Tr. 417).

On May 23, 2013, Plaintiff followed-up with Dr. Baughman and reported "neck pain since her accident." (Tr. 538). Dr. Baughman noted that Plaintiff was using a cane and examination was normal. (Tr. 539). Dr. Baughman restricted her from driving and prescribed Fentanyl. (Tr. 539).

In May of 2013, Plaintiff also treated with Dr. Ernest Rubbo, M.D., at OIP, for left shoulder pain. (Tr. 595-96). Plaintiff reported "dull achiness," "slight weakness," and numbness and tingling in her left arm and hand. (Tr. 595). Examination indicated positive impingement sign and "some weakness with abduction" but full range of motion. (Tr. 595). In June and July of 2013, Plaintiff presented to Dr. Brett Himmelwright, D.O. at OIP for neck and right shoulder pain. (Tr. 576). Neither Dr. Rubbo nor Dr. Himmelwright mention a cane. (Tr. 572-76). Dr. Himmelwright noted, "she was

supposed to follow up with Dr. Fernandez but did not." (Tr. 572). In July of 2013, Dr. Himmelwright refused to prescribe new medications and referred her to physical therapy, and on follow-up on July 26, 2013, noted that Plaintiff "does do well when she takes Flexeril," emphasized that Plaintiff needed to start physical therapy and renewed her Flexeril. (Tr. 575-76) ("I had recommended physical therapy previously but she has not been able to do this as yet…physical therapy would be an important part of her recovery and we really needed her to get that started"). Ten days later, Plaintiff reported to Dr. Baughman that she had "completed PT with no help." (Tr. 532).

On September 20, 2013, Plaintiff presented to PA-C Kathryn Mueller, who noted "[s]he has been seen by Dr. Rubbo for some shoulder issues and she actually had her left shoulder injection and was told to followup if there is was no improvement. She actually did not followup and I am seeing her here today for bilateral shoulder pain, right greater than left and continued pain in her cervical spine." (Tr. 577).

Plaintiff denied having any musculoskeletal symptoms except left shoulder and spine pain to Dr. Baughman from May through December of 2013. (Tr. 526-37) ("denies…ambulatory dysfunction, arthritis, injury, joint swelling…numbness/tingling). Plaintiff underwent physical therapy for her shoulder and neck, and discharge notes on October 9, 2013 indicate that cervical range of motion had improved, shoulder range of motion had improved to nearly full range, and she had improved ability to reach overhead. (Tr. 597). In December of 2013, Dr. Rubbio noted pain but "she has not

noticed any loss of motion or strength." (Tr. 591). Plaintiff had tenderness and positive impingement sign with normal vascular, sensory, and range of motion examinations. (Tr. 581). Dr. Rubbo recommended shoulder surgery, which he performed in January of 2014 "with improvement of pre-operative symptoms." (Tr. 585).

In March of 2014, Dr. Rubbo noted stiffness and soreness with range of motion after falling on ice, but Plaintiff exhibited full range of motion and no tenderness. (Tr. 586). Dr. Rubbo prescribed physical therapy. (Tr. 586). In April of 2014, Plaintiff reported that she had stopped therapy due to pain, and Dr. Rubbo instructed Plaintiff to continue with physical therapy. (Tr. 589).

Plaintiff was scheduled to appear before the ALJ on April 11, 2014, although the ALJ would continue the hearing for Plaintiff to obtain counsel. (Tr. 92-106). On April 2, 2014, Plaintiff presented to Dr. Baughman and "state[d] the most important reason she is here is she needs a letter for SSI, that she states she is unable to work?" (Tr. 522). She reported significantly greater symptoms that she had at her previous follow-up on December 30, 2013 (Tr. 526), although she continued denying "disorientation, headache, numbness/tingling, seizures and stroke." (Tr. 522). Dr. Baughman stated that Plaintiff was "unbable(sic) to be gainfully employed" and listed her diagnoses. (Tr. 447).

Plaintiff attended physical therapy through April 17, 2014, then stopped going for three weeks. (Tr. 664-65). On May 5, 2014, when Plaintiff followed-up with Dr. Baughman, she reported "she has been going to physical therapy for about a month now,

3 times a week…has not seen any improvement." (Tr. 458). She reported only left shoulder pain and examination was normal. (Tr. 518). Plaintiff returned to physical therapy the next day, and physical therapists "educated [Plaintiff] that missing PT for a week allowed for increased pain." (Tr. 665). On May 12, 2014, Plaintiff reported to physical therapists that she was "see[ing] MD tomorrow to get results of MRI." (Tr. 668). On May 13, 2014, Dr. Rubbio noted that Plaintiff reported "improvement with physical therapy," with pain, but no weakness, crepitance, or abnormal range of motion. (Tr. 589). On May 14, 2014, Plaintiff "demonstrate[d] improved flexibility again this week to nearly [within full limits]" in passive range of motion. (Tr. 670). She reported "pain with all activities which causes her to continue to have severe difficulty sleeping and night and to be unable to open jars. Reaching activities have improved significant[ly] as a result of improved [active range of motion] and strength." (Tr. 670).  Physical therapists noted short-term "goal met" with regard to reaching. (Tr. 670). Plaintiff's short-term goal had been to have "improved [active range of motion] and strength to allow her to perform all necessary daily reaching activities with minimal pain or limitation." (Tr. 662). Plaintiff indicated that she was "able to move her arm and perform most activities" and "saw her MD who reports he feels she may be ready to start progressing toward a home program." (Tr. 669). Physical therapists concurred, indicating it was "appropriate to decrease frequency of treatment and begin to gradually progress toward home program." (Tr. 670).

In July of 2014, Plaintiff testified in support of her application for SSI, and testified to disabling musculoskeletal symptoms, an inability to walk without assistance, severe persistent numbness and tingling in her arms, a continued inability to perform reaching activities, fatigue, and leg weakness. (Tr. 50-82).

## C. Mental Impairments

At no point during the relevant period did Plaintiff treat with a psychiatrist or counselor. Doc. 10. In February of 2012, when she established care with PA-C Apke, she had "no depression and no sleep disturbance." (Tr. 319). Diagnoses included seasonal pattern depression and insomnia. (Tr. 320). PA-C Apke makes no mention of mental symptoms in June of 2012 and by July of 2012, diagnoses no longer included depression, insomnia, or any other mental impairment. (Tr. 316-17). She applied for benefits the next day alleging disabling mental limitations. (Tr. 22). Later that month, Plaintiff's Function Report indicated that she had  that she had multiple hobbies, interests, and friends, no need for reminders, no problem "getting along with others," and handled written instructions well, but had problems with verbal instruction, attention, task completion, memory, and handling stress. (Tr. 246). Three days later, Plaintiff followed-up with PA-C Apke, and the record makes no mention of mental complaints, mental status examination was normal, and Plaintiff was "not feeling tired or poorly." (Tr. 353).

In September of 2012, Plaintiff presented to the hospital after witnesses and family indicated that she likely took "nerve" or "sleeping" pills. (Tr. 495-98). She was initially

non-responsive but was alert on reevaluation and discharged that day. (Tr. 495-98). Providers indicate she might have utilized a "psychogenic coping mechanism" for dealing with a large group of people at a family party. (Tr. 495). On follow-up with PA-C Apke later than month, she indicated the hospitalization was due to a headache and neck pain, and indicated she "feels fine [and] has no complaint[s] today." (Tr. 352). Diagnoses include no mental impairments. (Tr. 352). Plaintiff would later report to respiratory specialists that her hospitalization had been for respiratory impairments. (Tr. 411).

In October of 2012, she presented to a consultative psychiatric examination with Dr. Bowers in support of her application for benefits, and reported significant mental symptoms and exhibited abnormalities on examination, however, she had "near miss" errors which could indicate lack of effort. (Tr. 329-36). Despite the subjective reports and findings, Dr. Bowers opined that Plaintiff had no more than moderate limitations and could perform all mental job requirements at least satisfactorily. (Tr. 329-36).

Most treatment records from October 23, 2012, three days after the consulting examination, through May 16, 2013, make no mention of mental complaints and include explicit denials of mental complaints, although seasonal depression and insomnia were again included as diagnoses. (Tr. 350-51, 548, 545, 552, 555, 590-94). When Plaintiff established care with Dr. Baughman on February 1, 2013, she reported anxiety and depression, but denied all psychiatric symptoms at subsequent visits on March 8, 2013; March 28, 2013; April 25, 2013; May 7, 2013; May 14, 2013. (Tr. 548, 545, 552, 555,

558). After Plaintiff's May 16, 2013 car accident, providers opined that she likely suffered a panic attack, but Plaintiff "denie[d] anxiety, depression, suicidal ideation" and "increased stressors." (Tr. 386, 411). Plaintiff "report[ed] anxiety and depression" on follow-up with Dr. Baughman on May 23, 2013, "denie[d] psychiatric symptoms" at visits on July 8, 2013; August 7, 2013; and  reported depression and anxiety from September 11, 2013 through April 2, 2014, a week before the first ALJ hearing when she asked Dr. Baughman for a note that she was disabled.  (Tr. 529, 535, 538). She "denie[d] psychiatric symptoms" on May 5, 2014, then testified to disabling psychiatric symptoms in July of 2014. (Tr. 41-89, 518).

Aside from Plaintiff's emergency room visit in September of 2012, treating providers observed no abnormalities at any mental status examination during the relevant period, with normal findings for "ability to follow directions," orientation, alertness, cooperativeness, pleasant attitude, affect, insight, judgment, attention, concentration, and memory. (Tr. 305, 308, 387, 395-96, 407, 409, 411, 417, 535, 58, 518, 522, 526, 529, 533, 537-38, 548, 552, 555, 559, 590-94 ) (February 24, 2012; May 3, 2012; September 27, 2012; October 23, 2012; January 3, 2013; February 1, 2013;  February 7, 2013; March 8, 2013; March 20, 2013; March 28, 2013; April 25, 2013; May 7, 2013; May 14, 2013; May 16-20, 2013; May 23, 2013, July 8, 2013; August 7, 2013; September 11, 2013; December 30, 2013; April 2, 2014; May 5, 2014).

On November 9, 2012, Dr. Henry Weeks, Ph.D, reviewed the record and authored an opinion on Plaintiff's mental impairments. (Tr. 113). Dr. Weeks opined that Plaintiff was moderately limited in handling detailed instructions and responding to changes in the work setting. (Tr. 118). Dr. Weeks explained that some of Dr. Bowers' moderate limitations were inconsistent with the reports of function in the Function Reports, her limitations were mostly physical, her mental allegations were only partially credible, and Plaintiff could handle simple instructions for simple, routine, repetitive tasks. (Tr. 118).

### D. Medication Side Effects

In July of 2014, Plaintiff testified that her Singulair, Novasc, Lipitor, and albuterol sulfate caused dizziness, to which the ALJ replied "I better stop driving and operating mach1nery then and working all that because I take [Singulair] everyday." (Tr. 55). She testified that she could not specify which medication caused dizziness because she had been taking all of them for a long time, each caused dizziness, and the dizziness had been consistent. (Tr. 58). She testified that she was dizzy, lightheaded, or drowsy "almost all day." (Tr. 54). Both Plaintiff and her mother reported in July of 2012 that medications caused dizziness, lightheadedness, and fatigue. (Tr. 247-48, 265). The medical records show that Plaintiff generally denied or did not report fatigue, dizziness, and lightheadedness. (Tr. 241, 248, 265, 317, 350-53, 392-94, 452, 456, 462, 464, 469, 472, 474, 497-98, 538, 345, 348, 518, 526, 529, 552, 555, 590).

### E. Respiratory Impairments (Asthma, COPD, Cigarette Abuse), Gastrointestinal Impairments, Headaches/Migraines/Syncope

Plaintiff testified to significant limitations arising out of respiratory and gastrointestinal impairments. (Tr. 62) ("sick in the stomach pain"); (Tr. 67) ("Allergies real bad" in summertime); (Tr. 68) (uses nebulizer "every four to six hours"); (Tr. 71) (only eats one meal a day because hernias make her stomach upset, and has to lay down due to stomach sickness after eating her one meal); 73 (unable to work because she has "a hard time breathing"). Medical records show she denied having any respiratory or gastrointestinal symptoms two months earlier. (Tr. 522). Plaintiff had briefly reported gastrointestinal symptoms in 2011, but they had resolved within three months with no follow-up. She treated briefly with a gastroenterologist in 2012, but improved significantly with a prescription change (Tr. 304-14), remained on the same prescription through the relevant period, and denied gastrointestinal complaints at each subsequent treatment visit, (Tr. 241, 248, 265, 317, 350-53, 392-94, 452, 456, 462, 464, 469, 472, 474, 497-98, 538, 345, 348, 518, 526, 529, 552, 555, 590), aside from a brief period in 2013 (Tr. 529, 532, 535), including the day she asked Dr. Baughman for a letter that she was disabled (Tr. 522).

Specialists at Lung, Asthma, Sleep Associates characterized her asthma as "mild." (Tr. 458, 466, 469, 472). Providers noted respiratory findings on examination, usually wheezing, in a few treatment records, (Tr. 352, 390, 549), but observed normal respiratory findings on examination at most treatment visits. (Tr. 305, 308, 317, 350-51,

380, 407, 409, 411, 432, 452, 456, 462, 464, 469, 472, 474, 497, 518, 522, 532, 535, 539, 559). One provider observed, "continued to complain of shortness of breath, however the patient does not visibly appear short of breath." (Tr. 380). Plaintiff sporadically reported respiratory symptoms to treating providers. (Tr. 555, 559, 390, 535-38) and to the CE in support of her application for SSI (Tr. 331), but most treatment records either document no respiratory symptoms or contain explicit denials of respiratory symptoms. (Tr. 305, 308, 317, 350-51, 380, 407, 409, 411, 432, 497, 518, 522, 532, 535, 539, 559). She smoked cigarettes throughout the relevant period, although all of her physicians advised her to stop. Doc. 9; *see e.g.* (Tr. 537) (Dr. Baughman explained "the only thing that she can do at this point to help her symptoms is to stop smoking").

Plaintiff did not testify to any problems with headaches or migraines at the ALJ hearing. (Tr. 50-87). Plaintiff does not report any problems with headaches or migraines in the July 2012 Function Report. (Tr. 240-47). A medical expert, Dr. Mesaros, reviewed the objective evidence related to headaches, a brain MRI, and concludes that it did not support work-related limitations caused by headaches. (Tr. 113). Plaintiff occasionally reported headaches but typically denied them. (Tr. 241, 248, 265, 317, 350-53, 392-94, 452, 456, 462, 464, 469, 472, 474, 497-98, 538, 345, 348, 518, 526, 529, 552, 555, 590).

Plaintiff reported passing out in September of 2012; her family and bystanders indicated that she likely took sedatives. (Tr. 495-98). In May of 2013, she reported passing out while driving, but screenings and physical examinations were normal. (Tr.

373-417). Providers opined these events were a psychogenic coping mechanism and a panic attack, respectively. (Tr. 495-98, 373-417). Plaintiff denied other episodes of alleged syncope. (Tr. 535) ("two episodes of syncope - one was august of last year the other 5-28-13"). Plaintiff reported syncope on April 2, 2014, the day she asked Dr. Baughman for a letter that she was disabled. (Tr. 522). The record contains no other reports of syncope. Doc. 10.

### F. VE testimony

A VE appeared at the hearing and testified that a claimant with the RFC assessed by the ALJ could perform work in the national economy. (Tr. 81-84). The VE further testified that if Plaintiff was further limited to a range of sedentary work, with the same non-exertional limitations, or work with a sit/stand option and only occasional use of the hands, she could still perform work in the national economy. (Tr. 82-84, 87-88). The VE testified that an individual could still work as a bakery line conveyor in the sedentary exertion range given the following restrictions:

> [L]imited to unskilled work and would have limitation of occasional interaction…with the public, coworkers, and supervisors… occasional postural limitations…for bending and stooping…using ramp and stairs… would not be able to be expected to kneel, crouch, or crawl…occasional limitation on their upper extremity use for both upper extremities in their ability to reach, grip, grasp, handle, finger, and feel…the individual will further be limited in their ability to turn their head from side to side and up and down on an occasional basis, again, defined as one-third of the day, and will need to avoid temperature extremes and pulmonary irritants to the extent that they would be limited to like an office type environment in terms of the temperature and the dust and odors, and things like that.

(Tr. 86). The VE testified that if she needed to stand for five to ten minutes every hour using a cane for "balance," there would be no work the claimant could perform. (Tr. 87).

## V.   Plaintiff Allegations of Error

### A.  Sentence Six

Plaintiff submitted additional medical records to the Appeals Council that were not before the ALJ. (Tr. 10, 13). The Court may only consider these records if Plaintiff demonstrates that are new, material, and were omitted for good cause. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). Plaintiff does not allege that they were omitted for good cause. (Pl. Brief); (Pl. Reply). The records include two statements on issues reserved to the Commissioner by treating sources. (Tr. 10, 13). In *Matthews*, the Court held that there was no good cause to fail to submit a vocational evaluation when the claimant "should have known" it would be necessary. *Id.*; *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360-63 (3d Cir. 2011) (No good cause for failing to submit medical opinions). Plaintiff fails to demonstrate good cause for omitting these opinions. *Id.* Moreover, Plaintiff fails to demonstrate that they are material. First, to be material, they must pertain to the relevant period. *Matthews,* 239 F.3d at 593. Both opinions are from after the relevant period. (Tr. 10, 13). Second, to be material, they must create a reasonable possibility the ALJ would have changed the decision. *Id.* The ALJ reviewed an essentially identical, verbatim statement and concluded that Plaintiff was not disabled and not entitled to benefits. (Tr. 451). For the same reason, these statements are not new.

*Matthews,* 239 F.3d at 593. Thus, for a variety of reasons, the Court did not consider the evidence that was not submitted to the ALJ. *Id.*

## B. Medical Opinions

### 1. Ms. Kropa

Plaintiff asserts that the ALJ "failed to apply 06-03p" with regard to Ms. Kropa's statement. (Pl. Brief at 28-29). Ms. Kropa opined that Plaintiff should not drive due to her subjective reported loss of consciousness. First, it is unclear how this affects the ALJ's denial of benefits, as the VE identified jobs that do not require driving. (Tr. 86-87). Second, "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." *Morris v. Barnhart,* 78 Fed.Appx. 820, 824–25 (3d Cir.2003) (citing *Craig v. Chater,* 76 F.3d 585, 590 n. 2 (4th Cir.1996)). Third, SSR 06-3p provides that Ms. Kropa's statement "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* Plaintiff acknowledges that the ALJ explicitly addressed Ms. Kropa's opinion, but asserts the only analysis were statements that "PAC Kropa is not an acceptable medical source" and that "the undersigned considered the opinion of PAC Kropa," which were conclusory statements insufficient to satisfy SSR 06-03p. (Pl. Brief at 28-29). Plaintiff does not acknowledge the rest of the ALJ's evaluation. (Pl. Brief

at 28-29).[2] The ALJ evaluated Ms. Kropa's statement and explained why it was assigned little weight. (Tr. 32-33). SSR 06-3p requires nothing more. *Id.* Defendant cites the ALJ's rationale, and Plaintiff does not specifically address this rationale on Reply. (Def. Brief at 29). (Pl. Reply). The Court would not direct a verdict that Ms. Kropa's opinion be adopted if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

### 2. Dr. Baughman

Plaintiff asserts that Dr. Baughman's loss of consciousness form constitutes a medical opinion. (Pl. Brief at 29) (citing Tr. 443-44).  Again, "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion." *Morris v. Barnhart,* 78 Fed.Appx. 820, 824–25 (3d Cir.2003)

---

[2] (Tr. 32-33) ("the undersigned recognizes that these opinions were rendered by treatment providers…[but] they are inconsistent with the imaging documenting findings that are not consistent with the degree of symptomatology al1eged by the claimant and notes of treatment documenting the improvement in symptoms realized through physical therapy and with the use of medication, the claimant's recognized ability to walk with a normal gait and the claimant's failure to fol1ow al1 treatment recommendations designed to provide her with greater relief of her symptoms than already realized, including smoking cessation and exercising, as wel1 as the claimant's ability to help her friend by gardening and caring for her friend's chickens several days per week. Moreover, notes of treatment indicate that Dr. Baughman's opinion was rendered only after the claimant stated that most importantly, she needs a letter from him stating that she is unable to work for SSI, which suggests that the opinion may be the result of the claimant's suggestion or request as opposed to an opinion based upon the objective medical findings. Further, regarding the opinions as to the claimant's ability to drive, it is interesting to note that while it appears that the claimant passed out due to anxiety symptoms, it does not appear that the claimant was referred by her primary care provider for any specialized mental health treatment pertaining to anxiety…these opinions are given little weight").

(citing *Craig v. Chater,* 76 F.3d 585, 590 n. 2 (4th Cir.1996)). When asked for diagnostic support, Dr. Baughman indicated "none" and explained that tests were pending. (Tr. 443). Moreover, driving limitations do not affect whether she could perform jobs that do not require driving. *Supra.*

Plaintiff devotes most of her argument to Dr. Baughman's statement that Plaintiff was "unbable[sic] to be gainfully employed." (Pl. Brief at 25-28). Plaintiff asserts that the ALJ violated SSR 96-5p by failing to "evaluate" Dr. Baughman's statement, but precedes this assertion with an analysis of the evaluation the ALJ provided. (Pl. Brief at 25-28). The ALJ complied with the requirement to evaluate Dr. Baughman's statement. (Tr. 31-32). The ALJ was entitled to discount the statement as a statement reserved to the Commissioner. *See* SSR 96-5p. Dr. Baughman is a medical, not vocational, expert. (Tr. 451). For Dr. Baughman to accurately conclude that Plaintiff is unable to work, he would need expertise in the job requirements in the local economy. *See* SSR 00-4p. Dr. Baughman may not be aware of existing jobs that can be performed despite significant limitations, like a nut sorter *Id.* As a result, Dr. Baughman's conclusory statement is of little probative value. *Id.*

Plaintiff cites various Regulations and cases that apply to medical opinions, but the Regulations preclude the Court from considering Dr. Baughman's statement as a medical opinion. (Pl. Brief at 25-28); 20 C.F.R. §404.1527(d) (excluding statements on issues reserved to the Commissioner from the definition of medical opinion). Plaintiff cites

evidence that was not before the ALJ, but as discussed above, the Court did not consider this evidence. (Pl. Brief at 27-28). Otherwise, Plaintiff provides no other reason why the ALJ erred in assigning Dr. Baughman's statement on an issue reserved to the Commissioner little weight. (Pl. Brief); (Pl. Reply). As noted in the section above, the ALJ provided multiple other rationales. *Supra* n.2. Plaintiff fails to discuss these rationales. (Pl. Brief). Defendant cites the ALJ's rationale that Dr. Baughman's opinion was inconsistent with the record as a whole. (Def. Brief at 27). Defendant cites objective imaging, Plaintiff's improvement when she complied with treatment, non-compliance with treatment, normal examination findings, and her activities of daily living, along with Dr. Mesaros' opinion. (Def. Brief at 27, 30). Plaintiff does not specifically address these inconsistencies on reply, instead arguing that Defendant "failed to cite any inconsistency or opinions that contradicted Dr. Baughman's opinions." (Pl. Reply at 4). Plaintiff fails to demonstrate that no reasonable person would rely on these rationales to assign little weight to Dr. Baughman's statement. Substantial evidence supports the ALJ's assignment of weight to Dr. Baughman's statement. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

SSR 96-5p provides that an ALJ may not reject a treating source medical opinion for a lack of support without recontacting the treating source for additional information. *Id.* However, District Court review is limited by 42 U.S.C. §405(g). *See Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). As discussed above, *Matthews* interpreted 42

U.S.C. §405(g) to prohibit remand when Plaintiff alleges that the ALJ should have considered additional information unless Plaintiff's establishes good cause for omitting the evidence from the ALJ and that the evidence is material. *Id*. *Matthews* explained:

> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins,* 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). In *Matthews*, the Court held that the claimant "should have known" the additional evidence, a vocational evaluation, was necessary. *Id.* Consequently, the claimant failed to establish good cause. *Id.*

Plaintiff cannot evade the good cause requirement by framing the issue as recontact pursuant to SSR 96-5p. The rationale for the good cause requirement applies in the recontact context. By arguing that the ALJ should have recontacted the treating source, a claimant implicitly argues that the treating source had new and material information that the ALJ should have obtained. However, Plaintiff was "in a better

position to provide information about his or her own medical condition." *Martin v. Colvin*, 4:11-CV-02378, 2014 WL 1235664 (M.D. Pa. Mar. 25, 2014) (quoting *Money v. Barnhart,* 91 Fed. Appx. 210, 215 (3d Cir.2004) (*Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a)). Allowing a claimant to secure a remand pursuant to SSR 96-5p for failing to recontact the treating source could tempt claimants to submit statements on issues reserved to the Commissioner, but not medical opinions or RFC assessments, "with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled." *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001) (quoting *Szubak*, 745 F.2d at 834).

Plaintiff "should have known" that a treating source medical opinion would be necessary. *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). The Regulations plainly state that statements on issues reserved to the Commissioner are not medical opinions or entitled to any special deference. *See* 20 C.F.R. §404.527; SSR 96-5p. Plaintiff has failed to establish good cause for failing to submit any treating source medical opinions. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360 (3d Cir. 2011) (claimant failed to establish good cause for failing to submit medical opinions). The Court does not recommend remand on these grounds.

### 3.  Dr. Bowers CE

Plaintiff asserts that an ALJ may not rely on some parts of an opinion and reject others. (Pl. Brief at 29) (citing *Smith v. Bowen,* 687 F. Supp. 902, 904 (S.D.N.Y 1988)).

However,  SSR 96-5p provides that "adjudicators must remember, however, that medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." *Id.* Plaintiff asserts that the ALJ "cherry picked" the evidence in assigning partial weight to Dr. Bowers' opinion, but does not elaborate. *See* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs"). Plaintiff otherwise simply summarizes Dr. Bowers' opinion. (Pl. Brief at 30).

Plaintiff fails to explain how this opinion supports her claim for disability. (Pl. Brief at 30). Dr. Bowers' opinion defined "moderate" limitations as those that allowed a claimant to perform "satisfactorily." (Tr. 329). The ALJ included limitations to interacting with the public and coworkers. (Tr. 26). The jobs identified by the VE required handling only simple instructions, and the VE testified that jobs would remain if Plaintiff was limited to unskilled work (Tr. 86). A bakery line conveyor has is a "reasoning level 1" job, which requires being able to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." 524.687-022 BAKERY WORKER, CONVEYOR LINE, DICOT 524.687-022. *See Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (Even reasoning levels of two or three are consistent with simple, routine, unskilled work); *Sweeney v. Colvin*, No. 3:13-CV-02233-

GBC, 2014 WL 4294507, at *17 (M.D. Pa. Aug. 28, 2014) (internal citations omitted).

Plaintiff later alleges that her anxiety required additional social restrictions. She cites Dr.

Bowers' assessment of a slight limitation in interacting with supervisors, but slight was

defined as "mild limitation in this area, but the individual is still able to function well."

(Tr. 334). Neither Plaintiff nor her mother indicated that Plaintiff had any limitation in

getting along with others and her mother reported that she gets along with authority

figures "pretty well." (Tr. 240-65).

Substantial evidence supports the ALJ's decision to not include additional mental

limitations. Dr. Weeks explained that some of Dr. Bowers' moderate limitations were

inconsistent with the reports of function in the Function Reports, her limitations were

mostly physical, her mental allegations were only partially credible, and Plaintiff could

handle simple instructions for simple, routine, repetitive tasks. (Tr. 118). The ALJ

rejected additional limitations because:

> To the extent that these opinions are consistent with findings of no limitation
> in activities of daily living and concentration, persistence or pace and
> moderate limitation in social functioning, they are supported by the
> claimant's lack of any significant treatment relating to a mental health
> impairment, the claimant's ability to spend time with friends and to visit with
> others and the "near miss errors" during the consultative examination that
> suggested that the claimant was not putting forth strong effort in testing.
> Further, the undersigned is aware that the GAF assessment score represents
> a subjective assessment of an area of the claimant's functioning at a specific
> time based upon information provided by the claimant, not an objective
> representation of the claimant's overal1 functioning over a longitudinal
> period of time. For these reasons, these opinions are given partial weight.

(Tr. 32). The ALJ accurately characterized the record. Plaintiff reported and exhibited significantly greater symptoms to the consultative examination in connection with her application for benefits than to any treating provider, no treating provider observed any abnormality on mental status examinations except immediately after her family reported she took sedatives, she never treated with a psychiatrist or counselor, and she frequently denied having any psychiatric symptoms at all. *Supra* at 14. These are proper rationales. Unlike treating source medical opinions, the ALJ may reject non-treating medical opinions with the medical records. *See, e.g. Reznick v. Colvin*, 4:15-cv-01693-MWB, Report and Recommendation at \*23, (M.D.P.A. June 3, 2016). Moreover, the ALJ may reject any medical opinion, including those from treating sources, with non-medical evidence like the Function Report. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016).

Plaintiff fails to address or challenge the ALJ's rationale. (Pl. Brief at 30). Defendant notes that "the ALJ properly discounted Dr. Bowers' opinion where Plaintiff was able to spend time with friends and family, had "near miss errors" during the consultative examination suggesting she was not putting forth a strong effort during her testing with Dr. Bowers (Tr. 32, 332)." (Def. Brief at 30). Plaintiff does not specifically address these arguments on reply. (Pl. Reply). Plaintiff fails to demonstrate that no reasonable person would have relied on the explanation provided by the ALJ to assign only partial weight to Dr. Bowers' opinion. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d

Cir. 2003). The Court would not direct a verdict in Plaintiff's favor if this issue was

before a jury. *Id.* The Court does not recommend remand on these grounds.

### 4. Dr. Mesaros

The ALJ assigned "significant weight" to Dr. Mesaros' opinion because it was:

> [S]upported by the imaging documenting findings that are not consistent
> with the degree of symptomatology alleged by the claimant and notes of
> treatment documenting the improvement in symptoms realized through
> physical therapy and with the use of medication, the claimant's recognized
> ability to walk with a normal gait and the claimant's failure to follow all
> treatment recommendations designed to provide her with greater relief of her
> symptoms, as well as the claimant's ability to help her friend by gardening
> and caring for her friend's chickens several days per week.

(Tr. 32-33). Plaintiff notes that "a State Agency opinion can be given greater weight

consideration than a treating source only under special circumstances," but there were no

treating sources in the record here. (Pl. Brief at 32) (citing SSR 96-6p). Plaintiff identifies

Dr. Mesaro's as a non-treating, non-examining source, but that does not mean his opinion

is automatically entitled to limited weight. (Pl. Brief at 32). Instead, this case is like

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011), where claimant failed to

timely submit treating source medical opinions and the ALJ properly relied on an

uncontradicted opinion from a non-treating, non-examining source. *Id.* at 360-63.

Defendant cites *Chandler*, and Plaintiff does not specifically address *Chandler* on reply.

(Def. Brief at 31); (Pl. Reply). Instead, Plaintiff repeats that Dr. Mesaros is a non-

examining source. (Pl. Reply at 5). Identifying Dr. Mesaros as a non-examining source

does not end the inquiry. *Id.* Plaintiff provides no reason to conclude the ALJ erred in

finding Dr. Mesaros' opinion to supported by and consistent with the record. (Tr. 32-33).

The Court would not direct a verdict in Plaintiff's favor if the issue were before a jury.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend

remand on these grounds.

## C. Credibility

Plaintiff asserts that the ALJ erred in relying on sporadic and transitory daily

activities to find her less than fully credible. (Pl. Brief). The Court agrees, but finds the

error harmless, because the other rationales provide substantial evidence, and Plaintiff

fails to challenge the other rationales. *Brumbaugh v. Colvin,* 3:14–CV–888, 2014 WL

5325346, at *16 (M.D.Pa. Oct. 20, 2014).

When making a credibility finding, "the adjudicator must consider whether there

is an underlying medically determinable physical or mental impairment(s)…that could

reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P.

If objective evidence indicates underlying impairments, but not resulting limitations, the

ALJ must assess credibility. To assess credibility, the ALJ must "consider" evidence

from the claimant's "prior work record," claimant's statements, medical records, and

observations of Social Security employees. 20 C.F.R. § 404.1529(c)(3). The ALJ must

"consider" factors including (1) "daily activities;" (2) "the location, duration, frequency,

and intensity of your pain or other symptoms;" (3) "precipitating and aggravating

factors;" (4) medication; (5) treatment; (6) other measures that relieve symptoms; and (7)

"other factors" related to functional limitation. *Id.*

Plaintiff asserts that her claims should have been assigned great weight. (Pl. Brief

at 33-34). The Third Circuit held in *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993):

> An ALJ must give serious consideration to a claimant's subjective
> complaints of pain, even where those complaints are not supported by
> objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985).
> "While there must be objective evidence of some condition that could
> reasonably produce pain, there need not be objective evidence of the pain
> itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a
> claimant's complaints of pain, the complaints should then be given "great
> weight" and may not be disregarded unless there exists contrary medical
> evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

*Id.* 1067-68. The ALJ properly found that objective medical evidence supported

underlying medical impairments, but not the alleged limiting effects of Plaintiff's

symptoms. (Tr. 27-31). Plaintiff's claims were entitled to "serious consideration," not

"great weight," and the ALJ was required to make a credibility assessment. *Id.*

The ALJ found that Plaintiff's statements about the limiting effects of her

symptoms were not fully credible based on a lack of objective medical evidence; non-

compliance with treatment suggestions to quit smoking, undergo a neurology referral,

and attend physical therapy; gaps in treatment between October of 2010 and July of 2011

for primary care and October of 2010 and July of 2012 for orthopedic care; conservative

treatment for mental impairments; conflicting claims; and activities of daily living. (Tr.

27-31). Plaintiff asserts that the ALJ erred by not explicitly addressing other factors, like

the side effects of medications, because the Regulations require the ALJ to "consider" these factors. (Pl. Brief at 32-37). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart,* 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") *quoting Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998).   Moreover, the records show that Plaintiff generally denied having the side effects she reported in support of her application for benefits, although she briefly reported lightheadedness to Dr. Baughman and occasionally reported fatigue. (Tr. 433, 450, 453, 457, 461, 465, 468, 518, 522, 525-26, 529, 532, 535, 538, 545, 548, 551-52, 555-56, 569).

The ALJ relied on conservative treatment. (Tr. 36-33). Plaintiff asserts that the ALJ erred in concluding that there was a gap in treatment between October of 2010 and July of 2011, but cites only her cervical surgery in October or November of 2010. (Pl. Brief at 35-36). Plaintiff does not cite any record evidence that Plaintiff received treatment after November of 2010 until July of 2011. (Pl. Brief at 35-36). Similarly, Plaintiff alleged that her pain was disabling, but was noncompliant with physical therapy for three weeks, which "allowed for increased pain." (Tr. 665). Plaintiff does not address the ALJ's assessment of psychiatric treatment as conservative, despite allegedly disabling mental health symptoms, which undermines the credibility of Plaintiff's allegations as a

whole. *See* SSR 96-7p (ALJ may look to "overall" consistency). Moreover, lack of insurance does not explain why Plaintiff continued to be non-compliant by smoking cigarettes.[3] The ALJ noted that providers informed Plaintiff that smoking cigarettes inhibited treatment effectiveness for asthma and musculoskeletal impairments. (Tr. 27-31). The ALJ properly relied on Plaintiff's conservative and non-compliant treatment. *See* SSR 96-7p; 20 C.F.R. §404.1529.

The ALJ found that the objective medical evidence, as interpreted by all of the medical opinions, contradicted Plaintiff's subjective claims. (Tr. 27-31). Defendant cites the lack of objective medical evidence. (Def. Brief at 35). Plaintiff acknowledges Defendant's contention on reply, but does not specifically address objective medical evidence. (Pl. Reply at 6). Throughout Plaintiff's briefs, she cites various objective findings. (Pl. Brief); (Pl. Reply). However, Plaintiff fails to demonstrate that no reasonable person would have relied on the medical experts to conclude the objective medical evidence fails to support her allegations of disabling limitations. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Neither Plaintiff's nor the Court's lay reinterpretation of medical evidence can establish that the medical expert interpretations lacked substantial evidence. *See Seever v. Barnhart*, 188 F. App'x 747, 754 (10th Cir. 2006) (citing *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir.1996)) (We will not fault the ALJ for failing to interpret [Plaintiff's] symptoms and test results differently than [a

---

[3] Unlike obesity, there are no special prerequisites to discount cigarettes use as evidence of noncompliance with treatment. SSR 00-2p,

medical expert]"). The ALJ properly relied on a lack of objective medical evidence. *See also Gallo v. Colvin*, 186 F. Supp. 3d 351, 353 (M.D. Pa. 2016) (Court, like ALJ, should refrain from reinterpreting medical evidence to supplant medical expert opinions)

The ALJ relied on inconsistencies between Plaintiff's reports to treating providers and her reports in support of her application for SSI. As noted above, Plaintiff's testimony regarding her musculoskeletal, gastrointestinal, respiratory, mental, neurological, and other impairments was significantly contradicted by the claims she made regarding these impairments to treating providers. *Supra*. Plaintiff repeatedly reported greater symptomatology and functional limitations in support of her application for SSI than she reported to providers. *Id.* Other inconsistencies exist. For instance, Dr. Dahl sent her to physical therapy, but she reported to Dr. Baughman eight days later that he never sent her. (Tr. 355, 394). She then underwent physical therapy for three weeks in April and by April 25, 2013, had no complaints and was walking with a normal gait. (Tr. 552-53). On July 26, 2013, Dr. Himmelwright emphasized that Plaintiff needed to start physical therapy. (Tr. 575-76). Ten days later, Plaintiff reported to Dr. Baughman that she had "completed PT with no help." (Tr. 532). Similarly, on May 5, 2014, she reported to Dr. Baughman "she has been going to physical therapy for about a month now, 3 times a week…has not seen any improvement." (Tr. 458). In fact, Plaintiff had not been to physical therapy since April 17, 2014. (Tr. 663). The next day, physical therapists explained her absences allowed more pain. (Tr. 665). Contrary to her reports to Dr.

Baughman, whom she had asked to support her application for benefits, she reported to Dr. Rubbo and physical therapists that she improved significantly with physical therapy. (Tr.  670). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p.

Plaintiff asserts that the ALJ erred in evaluating her activities of daily living. "[W]hether the error is harmless depends on whether the other reasons cited by the ALJ…provide substantial evidence for her decision." *Brumbaugh v. Colvin,* 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014). The ALJ is entitled to deference with regard to credibility determinations. *See  Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)).   The objective medical evidence, as interpreted by the medical experts, Plaintiff's non-compliance with treatment, her conservative treatment, and her repeated inconsistent claims provide substantial evidence to the ALJ's adverse credibility finding. *See* SSR 96-7p; 20 C.F.R. §404.1529. Plaintiff fails to demonstrate that no reasonable person would rely on these factors to find her less than fully credible. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Even if the ALJ erred in assessing her activities of daily living, the error was harmless. *Id.* The Court would not direct a verdict in Plaintiff's favor if the issue were before a jury. *Id.* The Court does not recommend remand on these grounds.

Plaintiff later asserts that the ALJ erred in assessing the RFC. (Pl. Brief at 22-25). Specifically, Plaintiff asserts that the ALJ erred in finding that she could stand or walk for six hours a day, that she did not need to use a cane, that she had additional limitations in lifting, carrying, and using her hands due to numbness, and her anxiety would limit her ability to interact with supervisors. (Pl. Brief at 22-25, 38-40). The only evidence of these additional limitations was Plaintiff's subjective testimony, which the ALJ properly found less than fully credible. *Supra.* With regard to standing, walking, and using her hands, any error was harmless, because the VE also testified that if Plaintiff was further limited to a range of sedentary work, with the same non-exertional limitations, or work with a sit/stand option and only occasional use of the hands, she could still perform work in the national economy. (Tr. 82-84, 87-88). Plaintiff selectively cites SSR 96-9p, but does not acknowledge that SSR 96-9p allows the ALJ to include only "medically required hand-held assistive devices" in the RFC. *Id.* "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p.

Defendant notes that "the ALJ pointed out that while there are references Plaintiff using a cane to ambulate and walking with an antalgic gait, later notes of treatment indicate that Plaintiff walked with a normal gait (Tr. 519, 523, 530, 233, 536, 558).

Furthermore, there is no indication in the medical records that any treatment provider prescribed/recommended Plaintiff's cane." (Def. Brief at 24-25). Plaintiff does not specifically address this issue on Reply. (Pl. Reply at 5). Plaintiff cites her testimony that she needed a cane during ambulation, but her testimony is not medical documentation. (Pl. Brief at 34) (citing Tr. 64, 73). Plaintiff cites treatment records from OIP where providers observed Plaintiff using a cane and psychiatric consultant Dr. Bowers' observation she was using a cane.  (Pl. Brief at 34). (citing Tr. 327, 331,  590, 592). However, an observation that Plaintiff was using a cane is not equivalent to an opinion that she medically required a cane. *See Morris,* 78 Fed.Appx. at 824–25 ("mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion") (citing *Craig,* 76 F.3d at 590 n. 2). Moreover, Plaintiff cites only OIP records from July of 2012 to March of 2013. (Tr. 327, 590, 592). As Defendant notes, multiple treatment records indicated normal gait without use of a cane. Plaintiff does not identify any "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p.[4]

---

[4] *See also Williams v. Colvin*, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing *Howze v. Barnhart,* 53 F.App'x 218, 222 (3d Cir.2002)); *Keys v. Colvin*, No. 3:14-CV-1913, 2015 WL 1275367, at *13 (M.D. Pa. Mar. 19, 2015); *Dyer v. Colvin,* No. 3:14-CV-1962, 2015 WL 3953135, at *18 (M.D. Pa. June 29, 2015).

## D. Third Party Statement

Plaintiff asserts that the ALJ violated SSR 06-3p by failing to "evaluate" Plaintiff's

mother's statement, then concedes that the ALJ evaluated the statement and discounted it

because it was:

> [I]nconsistent with the claimant's failure to seek or undergo medical
> treatment relating to her impairments until July of 2011 or to treat with an
> orthopedist until July 2012, the imaging findings that are not consistent with
> the degree of symptomatology reported by the claimant, the improvement in
> symptoms realized through treatment recommendations the claimant
> followed, the claimant's failure to comply with all recommendations
> designed to provide her with greater relief of symptoms than she already
> realized and the claimant's ability to help her friend with her garden and
> chickens.

(Pl. Brief at 31) (citing Tr. 33). SSR 06-3p requires only that the ALJ explicitly evaluate

third-party statements, and the ALJ complied. *Id*. Aside from arguing that the ALJ failed

to consider this statement, Plaintiff makes no argument. (Pl. Brief at 31-32). Plaintiff

does not explain why the ALJ was not entitled to rely on the evidence and rationales

described above. (Pl. Brief at 31-32). Defendant notes that Plaintiff's mother's statements

were duplicative of Plaintiff's claims, inconsistent with the record, and failed to support

Plaintiff's claim that she suffered additional, specific, work-related limitations. (Def.

Brief at 32-33). Plaintiff does not specifically address these claims on reply. (Pl. Reply).

Four days after the mother's Function Report, Plaintiff reported to PA-C Apke that she

had "no neck pain…no musculoskeletal symptoms, no arthralgias, no soft tissue

swelling" and PA-C Apke observed normal findings on musculoskeletal examination.

(Tr. 304). The Court would not direct a verdict in Plaintiff's favor if this issue was before a jury and does not recommend remand on these grounds. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

## E. Step 2

Plaintiff asserts that the ALJ erred in finding that her migraines were non-severe. (Pl. Brief at 17-20). Plaintiff notes that a slight abnormality standard is used at step two. (Pl. Brief at 17-20). Plaintiff argues only that the ALJ erred in applying the slight abnormality standard. (Pl. Brief at 17-20). This is only the first step in the analysis. Errors in applying the slight abnormality test are harmless unless the ALJ erred in evaluating the impairment at subsequent steps. In other cases, Plaintiff's counsel cites *McCrea v. Commissioner of Social Security* for the proposition that "any step two denial" requires close scrutiny. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (emphasis added). "However, the United States Court of Appeals for the Third Circuit explicitly states in *McCrea* that because the limited function of step-two is to dispose of groundless claims, 'the Commissioner's determination to *deny an applicant's request for benefits at step two* should be reviewed with close scrutiny,' [so] close scrutiny is only required when benefits have been denied at step two, as opposed to each time a purported impairment was not fully developed." *Brown v. Colvin*, No. 415CV00992MWBGBC, 2016 WL 6652360, at *2 (M.D. Pa. Nov. 10, 2016) (internal footnote omitted). Consequently, these cases are dicta regarding ALJs who proceed past step two. *See Kool,*

*Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir.2002). Dicta may be used as persuasive authority when there is no precedent on an issue. *Id.* Here, however, the Third Circuit has issued a precedential decision addressing how to evaluate step two claims when the claim is not denied at step two and the analysis proceeds. *See Rutherford v. Barnhart,* 399 F.3d 546, 552–53 (3d Cir.2005). In *Rutherford*, the Court held that any error in evaluating the claimant's obesity was harmless because:

> [Claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand.

*Rutherford*, 399 F.3d at 553.

In several cases before the undersigned involving Plaintiff's counsel, Attorney Niven, the Court has applied the "generalized response" analysis of *Rutherford*.[5]  Here, Plaintiff notes that providers diagnosed her with migraines. (Pl. Brief at 20). Diagnoses

---

[5] *Pleacher v. Colvin*, No. 1:13-CV-02756-GBC, 2015 WL 1470662, at *7 (M.D. Pa. Mar. 31, 2015) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005)); *see also Gorby v. Colvin*, No. 3:14-cv-2195 (M.D. Pa. Mar. 19, 2016); *Snyder v. Colvin*, No. 4:15-cv-00389 (M.D. Pa. Mar. 14, 2016); *Tolbert v. Colvin*, No. 114CV02194CCCGBC, 2016 WL 1458236, at *16 (M.D. Pa. Mar. 11, 2016), *report and recommendation adopted*, No. 1:14-CV-2194, 2016 WL 1450168 (M.D. Pa. Apr. 13, 2016); *Orndorff v. Colvin*, No. 114CV02465CCCGBC, 2016 WL 1458408, at *9 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:14-CV-2465, 2016 WL 1450172 (M.D. Pa. Apr. 13, 2016); *Ritz v. Colvin*, No. 115CV00388CCCGBC, 2016 WL 1458914, at *9 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:15-CV-388, 2016 WL 1450181 (M.D. Pa. Apr. 13, 2016); *Cleland v. Colvin*, No. 3:14-cv-1235 (M.D. Pa. Sept. 15, 2015) (Briefs submitted by Attorney Niven "assert[ing] that the ALJ failed to address her obesity, 'which could…exacerbate [her sleep disturbances]'" and that Plaintiff's "weight could affect her ability to sit, stand, walk, lift, carry, twist, bend, and climb stairs and ladders" was a "generalized response…not enough to require a remand").

address whether an impairment is medically determinable, not whether it is severe. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (There is no "presumption that a mere diagnosis…renders an applicant eligible for benefits under the Social Security Act"). Plaintiff notes that she reported symptoms like headaches, nausea, vomiting, vision problems, and an incidence of being found unresponsive, but these are not specific work-related functional limitations. (Pl. Brief at 19-20).   These are generalized allegations. *Rutherford*, 399 F.3d at 553. Defendant's Brief cites *Rutherford*, the relevant Third Circuit precedent, but Plaintiff does not address *Rutherford* on reply. (Def. Brief at 22); (Pl. Reply). Plaintiff's reply addresses only the slight abnormality standard at step two, not her obligation to demonstrate harmful error at subsequent steps, aside from stating that migraines affect "her ability to work on a sustained basis." (Pl. Reply at 1-2).

Finally, as noted above, the only evidence Plaintiff provides of the intensity, persistence, and limiting effects of her migraines are her subjective claims. (Pl. Brief at 19-20). The ALJ properly found that Plaintiff's subjective claims were not fully credible. *Supra.* Plaintiff cannot demonstrate that no reasonable person would have excluded additional migraine-related limitations from the RFC based only on her less-than-fully credible subjective testimony. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court would not direct a verdict if this issue were before a jury. *Id.* The Court does not recommend remand on these grounds.

## F. Bias

Plaintiff asserts that the Court must remand due to ALJ bias. (Pl. Brief at 38). Bias by an ALJ may require remand. *Schweiker v. McClure*, 456 U.S. 188, 195-96, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1 (1982). The Court "start[s], however, from the presumption that the hearing officers…are unbiased. This presumption can be rebutted by a showing of… [a] specific reason for disqualification." *Id.* Further, "the burden of establishing a disqualifying interest rests on the party making the assertion." *Id.*

Plaintiff asserts that the ALJ exhibited bias because she stated "I better stop driving and operating machinery then and working all that because I take [Singulair] every day--" after Plaintiff testified that Singulair caused dizziness. (Pl. Brief at 38). Plaintiff asserts that this statement is "unprofessional" and "gives the impression that the ALJ has a personal bias and perhaps a personal vendetta to deny benefits to those claimants who have medical conditions similar to her own." (Pl. Brief at 38). Defendant responds that "a party asserting bias must show that the behavior of the ALJ was 'so extreme as to display clear inability to render a fair judgment,'" and that these remarks were not extreme. (Def. Brief at 36-37) (citing *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

Plaintiff's conclusory allegations do not demonstrate that this isolated statement were extreme or "violated claimant's right to a full and fair hearing." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (finding bias where ALJ repeatedly interrupted claimant's representative, used obscenity, engaged in questioning that was "coercive and

intimidating, and totally irrelevant to the question of whether claimant was disabled," appeared disinterested in claimant's allegations of pain, and "continuously" interfered with the admission of relevant evidence). The ALJ hear held a hearing that lasted sixty minutes, developed significant testimony regarding Plaintiff's allegations of pain, allowed Plaintiff to admit all available evidence, and did not significantly interrupt or interfere with Plaintiff's counsel's ability to question Plaintiff. (Tr. 41-89).

Moreover, Plaintiff was represented by counsel at the time the ALJ made the remark, and did not object at the time. (Tr. 55). As another District Court has explained:

> In this regard we note that counsel on appeal was not the attorney who handled the initial disability hearing before the ALJ. That hearing counsel in our view properly chose not to raise any claims of bias, and thus waived these claims. *Hummel v. Heckler,* 736 F.2d 91, 94 (3d Cir.1984) (stating that when claimant is represented by counsel, failure to raise objection of ALJ's bias at the hearing operates as a waiver of the issue); *see also Grant v. Shalala,* 989 F.2d 1332, 1339 (3d Cir.1993) (holding that a district court lacks authority to conduct a trial and make independent finding of fact concerning the alleged bias of an ALJ and district court may only review findings on this question pursuant to the standard set in 42 U.S.C. § 405(g)). Since these claims of bias are unwarranted on this factual record, the choice of rearing counsel not to pursue this matter was a legally proper choice.

*Allen v. Colvin*, No. 1:12-CV-1624, 2014 WL 972188, at *2 (M.D. Pa. Mar. 12, 2014). Plaintiff has waived claims of bias against the ALJ. *Id.* The Court does not recommend remand on these grounds.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were

supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. The Court would not recommend directing a verdict if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).    Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial

evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after

being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

Dated: March 3, 2017                         _____s/Gerald B. Cohn_____
                                             GERALD B. COHN
                                             UNITED STATES MAGISTRATE JUDGE